# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GINGER D. HERNANDEZ, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-17-95-SPS |

## OPINION AND ORDER

The claimant Ginger D. Hernandez requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was forty-three years old at the time of the administrative hearing (Tr. 157). She has a high school education, and has worked as an explosives operator (Tr. 59, 190). The claimant alleges that she has been unable to work since October 31, 2013, due to osteoporosis, scoliosis, a fractured right hip, first metatarsal left foot fusion, degenerative disc disease, lumbar spinal stenosis, migraines, depression, high blood pressure, and chronic pain (Tr. 189).

**Procedural History**

On June 23, 2014, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 157-60). Her application was denied. ALJ Deirdre O. Dexter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 17, 2015 (Tr. 12-24). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except she could sit for six hours in an eight-hour work day with the option to stand for five minutes of every hour of sitting, and could

stand/walk up to two hours in an eight hour work day, but could never stand or walk more than thirty minutes before being allowed to sit (Tr. 16). Additionally, the ALJ found the claimant could occasionally stoop and climb ramps and stairs with the use of a handrail, but could never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds (Tr. 16). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *e. g.*, addresser, document preparer, and type-copy examiner (Tr. 21-23).

## Review

The claimant contends that the ALJ erred by failing to properly evaluate the February 2015 opinion of treating physician Dr. Kris Parchuri, and the Court agrees.

The ALJ found that the claimant had the severe impairments of degenerative disc disease of the lumbar spine and status post left foot metatarsal fusion, and the non-severe impairments of depression and osteoporosis, but that her alleged migraines were not medically determinable (Tr. 14-15). The relevant medical record reveals that the claimant established care with Dr. Parchuri on October 5, 2010 (Tr. 438-39). She reported low back pain and leg pain that began a year earlier after a fall (Tr. 438). At this initial appointment, Dr. Parchuri found pain throughout the claimant's thoracic and lumbar paraspinal muscles and limitation in forward flexion, extension, and side bending rotation secondary to discomfort (Tr. 438). He diagnosed the claimant with degenerative scoliosis with asymmetric disc collapse at L1-L2 and L2-L3, lumbar spinal stenosis at L1-L2 and L2-L3, and mechanical back pain (Tr. 438). Dr. Parchuri referred the claimant for a lumbar spine MRI, the results of which revealed advanced lumbar degenerative scoliosis with stenosis

at L1-L2 and L2-L3 (Tr. 436, 439, 634). At a follow-up appointment on November 3, 2010, Dr. Parchuri recommended spinal fusion surgery and fit the claimant for a lumbar sacral orthosis (Tr. 436). The claimant underwent an L1-L2, L2-L3 lateral and posterior spinal fusion surgery with instrumentation in February 2011 (Tr. 450, 570). At a follow-up appointment on February 14, 2013, the claimant reported increased back pain radiating into her right leg, and Dr. Parchuri ordered a lumbar spine MRI, the results of which revealed a left-sided pedicle screw deviation at L1 (Tr. 686-88). The claimant underwent a surgery to remove her spinal hardware on March 18, 2013 (Tr. 602-03). At a follow-up appointment on October 17, 2013, Dr. Parchuri noted the claimant was doing well with her medications, but opined that she was "essentially unable to perform her normal job duties at the ammunition plant. This includes lifting in excess of 15 to 20 pounds on a continuous basis along with continuous standing and walking. Therefore, she is essentially totally disabled." (Tr. 666-67). Dr. Parchuri administered a lumbar epidural steroid injection on March 10, 2014, which did not significantly relieve the claimant's pain (Tr. 813-18). Thereafter, he provided medication management through at least September 2015, the last treatment note in the record (Tr. 844-84, 919-32, 945-52).

State reviewing physician Dr. Matheen Khan completed a Physical Residual Functional Capacity Assessment on December 30, 2014, and indicated that the claimant could perform light work with frequent balancing; occasional stooping, kneeling, and climbing ramps and stairs; and never crouching, crawling, or climbing ladders, ropes, and scaffolds (Tr. 89-90).

On February 25, 2015, Dr. Parchuri completed a Medical Source Statement ("MSS") regarding absences from work and indicated that the claimant would be absent three or more days per month due to chronic/acute back pain (Tr. 886). Dr. Parchuri also completed forms regarding sedentary work requirements, a clinical assessment of pain, and a physical RFC assessment (Tr. 887-93). He indicated on the sedentary work requirement form, *inter alia*, that the claimant could not stand/walk up to two hours in an eight-hour workday, sit up to six hours, lift/carry ten pounds, lift/carry five pounds repetitively, utilize both hands for manipulation, sustain activity at a pace and with the attention to task as would be required in the competitive workplace, or attend any employment on a sustained basis (Tr. 888). He indicated that the claimant's pain was irretractably and virtually incapacitating, that physical work activities would increase her pain to such an extent that rest and/or medication would be necessary, and that her pain would reduce basic mental work activities to such a degree that her functioning in the task would be inadequate or abandoned (Tr. 887). On the RFC questionnaire, Dr. Parchuri indicated that the claimant could sit for twenty minutes at a time for about two hours total in an eight-hour workday, could stand/walk for twenty minutes at a time for about two hours total in an eight-hour workday, and required a fifteen minute period of walking every twenty minutes (Tr. 890-91). He also indicated the claimant would need unscheduled breaks every fifteen minutes lasting fifteen minutes each (Tr. 891). Dr. Parchuri found that the claimant could occasionally lift/carry less than ten pounds, rarely lift/carry ten pounds, and could never lift/carry anything above twenty pounds (Tr. 891). Dr. Parchuri also found that the clamant

could rarely twist, and could never stoop, crouch/squat, or climb ladders or stairs, but had no limitations with reaching, handling, or fingering (Tr. 892).

In her written opinion, the ALJ gave controlling weight to Dr. Parchuri's assessments through June 2014 and to his October 2013 opinion that the claimant could not lift fifteen to twenty pounds on a continuous basis, and could not stand/walk continuously (Tr. 19). The ALJ gave partial weight to Dr. Parchuri's February 2015 opinions, finding they were inconsistent both internally and with the remainder of the medical record, specifically his October 2013 opinion, and numerous treatment notes where the claimant was not assessed with (or treated for) a mental impairment (Tr. 20).

Medical opinions of a treating physician such as Dr. Parchuri are entitled to controlling weight if "'well-supported by medically acceptable clinical and laboratory diagnostic techniques [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *Id.* at 1119. The factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's

attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ rejects a treating physician's opinion entirely, he must "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

In this case, the ALJ the ALJ adopted Dr. Parchuri's findings as to the claimant's ability to crouch and climb ladders, but rejected without explanation his limitations regarding the claimant's ability to sit, stand, walk, climb stairs, and twist, as well as the claimant's need for unscheduled breaks and her anticipated work absences (Tr. 890-91). It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of her own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). In addition to evaluating Dr. Parchuri's findings according to the appropriate standards, the ALJ should have explained why she found certain aspects of Dr. Parchuri's findings persuasive but not others. *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is

simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

Additionally, the ALJ rejected Dr. Paruchi's opinion partly because it was inconsistent with the medical record as a whole. This would have been a legitimate reason for rejecting his opinion if the ALJ had specified the inconsistencies to which she was referring. *See, e.g., Langley,* 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins,* 350 F.3d at 1300. *See also Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are.") [citation omitted]. Although the ALJ *did* specify some inconsistencies between the medical record and Dr. Parchuri's opinion as to the claimant's mental impairments, she did not specify any inconsistencies between the medical record and Dr. Parchuri's opinion as to the claimant's physical impairments and limitations.

Because the ALJ failed to properly evaluate the medical evidence, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

**Conclusion**

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 26th day of September, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**